We will hear argument next in number 242100, Katana, is that how we say it? Katana Silicon Technologies against Micron. Thank you, Your Honors. Good morning. May it please the Court. Howard Lim for Appellant Katana Silicon Technologies. I'd like to focus this Court's attention on two independent grounds for reversal, either of which compels the same outcome. First, actually, it does not require this Court to resolve the claim construction dispute at all. The second goes to the heart of what the patentees actually invented and what the Board got wrong when it construed the term adhesion. Starting with the claim in construction independent ground, even under the Board's own construction that an adhesion layer means simply a layer that adheres, the Mossovizadeh reference does not disclose the claimed invention. And because every single obviousness ground in all three IPRs depends on the Mossovizadeh reference, that alone requires reversal. Claim 30 of the 806 patent sets out a manufacturing method with... Can I just ask, where in your blue brief did you make the argument that there is no infringement even under the Board's claim construction? No disclosure of the... That there is no, I'm sorry, yeah, I didn't mean infringement. We're in IPR land. I don't remember... Tell me, you said when you began this morning, we disagree with the Board's claim construction, but even under the claim construction adopted, there's no invalidity. Where is that second argument in your brief? It's more laid out in detail in our reply brief. That's not a good enough place. Yes, but we did make it in the... We believe we laid it out in our primary opening brief as well, but it's really fleshed out in our reply brief. Where is it in your opening brief? I don't have the actual citations to the opening brief where, after collating everything, we stated most succinctly in the reply brief. So maybe start with the claim construction argument then. Yes. The claim construction argument is the Board's construed adhesion layer as a layer that adheres, and we believe this construction is so broad that it would encompass any adhesive at any stage of its chemical development applied by any method, and that is wrong, and the intrinsic record compels a narrower construction. The parties agree that adhesion layer is not a common term of art, and the patentees coined it. That makes the specification not just relevant, but dispositive. This Court's decision in Phillips is clear. When inventors used terms idiosyncratically, a context is everything, and the specification's context is unambiguous in two respects. First, the specification consistently uses different verbs for adhesive agents and for adhesion layers. For adhesive agents, pastes, epoxies, coatings, the specification always uses the verb apply. The specification describes the excessively applied adhesive agent. What about column four, lines 57 to 58? This is in your description. Page 17. I was looking at 710 in the 806 patent. Yes. Your Honor, column four, lines 57 to 58, you're referring to the passage that says, moreover, in the above manufacturing method, the adhesive agent does not overflow the space between the first. Yeah, that is what I'm talking about. Yes. I mean, that's the summary of your invention, right? Yes, the summary of the invention. And you say that there's an adhesive layer that's put on up above in describing this method of manufacturing, but then you say the adhesive agent does not overflow. And to me, I read that, and I read it as maybe using the word synonymously or suggesting that the adhesive agent becomes the adhesive layer, one of those two. We believe the correct reading is actually that there's an absence of an adhesive agent, and that's why there's no overflow. The adhesive agent is not used at all. It's gone. That's why it does not overflow. It's a little weird because it's describing the sentences, moreover, in the above manufacturing method, the adhesive agent does not overflow. And so you're telling me that I should assume from that it means that an adhesive agent is not used, and that's why it doesn't overflow. Yes, and if you say it refers back up to the method of manufacturing, and you'll look at the method of manufacturing, and it says forming the adhesion layer on the back of the wafer. But this is saying that the adhesive agent does not overflow the space between. Okay, I'm just trying to, you just said, you said the specification uses the word adhesive layer consistently throughout the specification. And I'm saying here is an example where these things, adhesion layer and adhesive agent are used either synonymously or at least the adhesion agent could be interpreted as being part of the adhesion layer. So I understand your response. Your response is that I'm supposed to understand from that that the adhesion agent is not being used. And yes, to clarify one more point is that I'm referring specifically to the verbs apply and adhere. They use the verb apply consistently throughout the spec as being, whenever an adhesive agent is used, it is applied. When an adhesion layer is used, it's adhered. And what does your claim say? My claim... It says forming, right? Forming, that's correct. Did you seek a special interpretation of forming? No, we did not have a, you know, provide a dictionary definition, but we believe in this context the forming is putting things together and not chemically forming. But you didn't ask for that interpretation? No, we didn't ask for that interpretation. Okay. So if I can move on. So every time adhesive agent is used, the verb apply is used. And, but whenever the thermal compression sheet, which is the embodiment of the adhesion layer that is described, the specification consistently uses the verb adhere. It is adhered to the back of the wafer. So this distinction is not accidental. Is there a difference between adhesion layer and thermal compression sheet? Adhesion layer is the claim term. We believe it's broader than just the embodiment thermal compression sheet. And we are, it is broader than, it is the claim term and it is different from the thermal compression sheet. But the thermal compression sheet is the described embodiment that's used throughout the specification. And the key point, do I understand correctly, is that you think that this layer must be a layer before it gets attached? It must be a layer at the wafer stage. Yes. Yes. Wait, what do you mean at the wafer stage? So semiconductors are made from wafers that are round. Right, but the trouble is at the wafer stage can mean, could still be after you've smeared a whole lot of paste on it and let it dry. That's still at the wafer stage. And you say that can't be, that's what you're trying to exclude, right? No? No. At the wafer stage, it's a layer, a solid preform sheet is adhered. The thermal, and the specification, I think we're talking past each other. I'm just trying to, my understanding of your argument is that there might conceivably be two ways of having a layer that sticks to a particular chip or all the chips that are going to be cut out of a wafer. One is put paste, let it dry. The other is pick a sheet, like a dryer sheet or something, off the shelf, put it on there. And you say only that preexisting sheet, not paste that becomes dry. Yes, Your Honor. That's absolutely where our position is. Okay. That complete preform sheet is adhered to the back surface of the wafer. The wafer is then cut into individual chips. And this goes to the whole purpose of the invention is such that to prevent this overflowing. Why doesn't the patent essentially say that purpose is fulfilled when you do this at the wafer stage, it's all dry, and you don't do the cutting until it's all dry. So that when you do the cutting, there's no overflow of the individual chips that you just cut out. Because when you use a sheet, there's no drying. When you use a sheet, it's a solid sheet that's already formed. There's nothing to be dried. You just cut it. What about the fact that the prior art that's relied upon here that uses the paste expressly says that the advantage of it, because it's put on the wafer before it's cut, right, is that it's quite even. And thus, it doesn't extend beyond a mounting surface of the die. I mean, it seems to really disclose the very advantage that you're talking about. And I point you to Appendix 1297, which is Figure 2 of the Masta Visade reference, the reference that you're referring to. And it has a very specific method of the Masta Visade reference. And it starts by saying, yes, you coat on the adhesive, right? I understand. You're going to point out the cure adhesive step at 120. Yes, and it's important. I guess I was using the disclosure of the prior art to suggest that it's not clear from your specification, and the prior art seems to support it, that the advantage comes from having a preformed layer as opposed to putting on the adhesive, whether it's a paste layer or a thermo layer, putting it on before you cut. There is, because this adhesive moves. It reflows. Masta Visade says you have to preheat the lead frame and the die at patch pad so the adhesive will reflow. It has to flow again. That completely defeats the purpose of the invention, where there's no flowing. Just before mounting the chip, the die, individual die that's been cut out has to reflow. And then it's cured. So it never reaches its final form. That reflowing is the key problem of Masta Visade. And even though it does say, yes, you're coating it on at the wafer stage, but because it's a method of using an adhesive that reflows, that creates the very problem the invention is seeking to solve. You're into your rebuttal time, so why don't you save the rest and go for Mr. Dufresne. Thank you. Thank you, Your Honors. May it please the Court. If I may, I thought I would pick up with a question Judge Toronto was asking about whether the sheet, a sheet that you can essentially pull off the shelf is what's required by Katana's argument. I understood it that same way, and it's clear from their brief, the blue brief on page 32, that their position is that the adhesion layer must be a fully formed solid layer before being adhered to the wafer chip. That's, I'm quoting from the brief on page 32. Now that view is completely inconsistent and conflicts with the structure of the claims in these patents. And I'm talking particularly about the forming claims, the method claims that require forming the layer on the wafer. Instead of fixing. Excuse me, Your Honor. Instead of fixing. They would read the claim to mean fixing a first layer on the back. That's their position. They say that that forming. Either fixing or applying. That's the way they would like to read the claim? Yeah, essentially putting it on the wafer. Yeah, well, applying it. Applying it. And that could be a meaning of forming. You could form something by putting things together. That's true. But there's no reason to exclude from forming, and there was no construction proposed for forming, to exclude the notion of forming on a surface, like a layer of frost forming on a window, for example. That's another common use of the word forming.  Creating, exactly. And if the claims were read the way. Oh, that's the it of the case. I mean, if we decide that forming is broader than fixing. I agree that that. Case is over. That is what I find most persuasive. I think that's enough to resolve the case. The Board relied on that. That was intrinsic evidence in the claims. There's additional intrinsic evidence in the claims that I'd be happy to go into with Claim 2 of the 860 patent. There's also a host of different pieces of evidence in the specification that support the Board's construction that it relied on, and the Board also made findings based on the intrinsic evidence, the prior art, and the expert testimony. They're entitled to deference and also support its construction. Was anything made of the tense, if that's the right term, of the word adhere? So it's adhered to as opposed to adhering to? Is your editor talking about the claim language? Yes, I am. I don't recall. I don't remember anybody making anything of this, but it's conceivable that one would use that particular tense of the verb adhere to mean to put together in a sticky way two things that preexist in the form that the noun indicates, so that you'd be having a layer that you then adhere to something else, as opposed to a layer that becomes such when you apply something that doesn't start out as a layer. So to answer your initial question, I don't remember anybody making any arguments based on that word. I do agree with Your Honor that the tense of that word could include a sense of adhering something like putting a sheet down onto a wafer. I would submit that it also would equally be appropriate to include and cover a situation where a layer was rolled on or put on there with adhesive and allowed to dry, and then that layer that would be there would also be adhered to the surface. I think that would be a perfectly natural way to refer to that as well. And that, again, highlights the problem with Catana's arguments in this case. We have this claim language throughout the claims, throughout the specification, that is perfectly susceptible to reading it, that these claims can cover both types of adhesion layers, both types of mounting media. And what they're trying to do is shoehorn in here some very restrictive negative limitations that would exclude any kind of adhesive taking any part in the formation of an adhesion layer. And there's just no basis to do that anywhere in the intrinsic record, and that's contrary to the findings of the board on the extrinsic evidence as well. If there are no more questions, I would cede the rest of my time. Thank you.  Your Honor, just to address the forming, very quickly on the forming, the board picked up on our experts' testimony that a layer can be formed through hardening as it's cured. And if you look at that part very clearly in the Masafzadeh reference, when hardening and curing, that occurs after the reflowing. And it's not the claim, claim 30A is very specific that the forming has to be on the wafer, not on the chip. So if Masafzadeh forms the adhesion layer on the chip, it's already a chip. The wafer is long gone. So it doesn't meet the claim. And so that's addressing the forming issue. So regardless of what you hold forming means, forming it chemically, Masafzadeh says, yes, based on the board's own finding, which is that, yes, it forms a layer after it hardens by curing. While Masafzadeh says the hardening, the forming occurs on the chip when it's in chip form and you cure it at the very last step of the Masafzadeh process. That's not forming on the wafer as required by claim 30A. It's very simple. It's the language of the claims. The board also said as to the drying, oh, yes, the drying is a layer. But the Masafzadeh is clear when it's dried, the layer becomes nonsticky. The construction the board adopted was a layer that adheres. So a nonsticky means it cannot adhere. Layer can be a layer that adheres. No, we don't believe it cannot. A nonsticky layer after the drying step cannot be a layer that adheres. Okay. I think we have the parties' arguments. Yeah. Thank you so much. Thanks to all counsel. Case is submitted.